# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SONIA MORENO-AVALOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:13-CV-347-TLS |
| ) | |
| CITY HALL OF HAMMOND, ) | |
| INDIANA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| -------------------------------------------------- ) | |
| ) | |
| SONIA MORENO-AVALOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:13-CV-450-TLS |
| ) | |
| CITY HALL OF HAMMOND, ) | |
| INDIANA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

On December 6, 2013, the Plaintiff, Sonia Moreno-Avalos, filed a pro se Complaint [ECF No. 1, Cause No. 2:13-CV-450] against the Defendants, City Hall of Hammond, Indiana, and five City of Hammond officials for harassment. Prior to the Complaint in this matter, the Plaintiff filed a pro se Complaint against the same Defendants for Breach of Contract and Violation of a Federal Bankruptcy Automatic Stay [ECF No. 1, Cause No. 2:13-CV-347]. The Court consolidated the two matters in an Opinion and Order [ECF No. 26] issued on February 3, 2014, which made Cause No. 2:13-CV-347 the lead case in this dispute (all ECF citations below are to the ECF numbers in the lead case). The Defendants in this matter filed a Motion to Dismiss in each case prior to the consolidation of the cases. The Court denied the Motions to Dismiss in an Opinion and Order [ECF No. 33] issued on August 8, 2014. The Defendants then filed an Answer [ECF No. 36] on August 22, 2014.

This matter is now before the Court on the Defendants' Motion for Judgment on the Pleadings [ECF No. 37], filed on August 22, 2014. On that same date, the Defendants also filed a Memorandum in Support of their Motion [ECF No. 38]. The Plaintiff filed a 40-page Response [ECF No. 41] on September 3, 2014. This Response exceeds the page limit requirements found in the Court's local rules. *See* N.D. IND. L.R. 7-1(e)(1). The Plaintiff also attempted to file Exhibits [ECF No. 42]. The Defendants filed a Reply [ECF No. 43] on September 10, 2014, and a Motion to Strike the Plaintiff's Exhibits [ECF No. 44]. With those filings in the record, the matter is fully briefed and ripe for ruling.

**PRELIMINARY MATTERS AND EXTRANEOUS FILINGS**

The Plaintiff is proceeding pro se and has filed voluminous documents with the Court. Her filings have been lengthy and difficult to comprehend. Through her filings, the Plaintiff has attempted to assert myriad claims against the Defendants and has done so repeatedly. Nonetheless, the Court has construed the Plaintiff's filings liberally given her pro se status.

There are a number of motions pending before the Court aside from the Motion for Judgment on the Pleadings. These motions include the Plaintiff's "Motion to Sue[] Defendants Under Their Official Capacity" [ECF No. 39], Plaintiff's Motion to Amend the Name of a Defendant [ECF No. 40], and the Defendants' Motion to Strike Exhibits [ECF No. 44]. The Plaintiff's motions regarding amending the Complaint to sue the Defendants in their official capacity and to amend the name of a Defendant are denied as moot because the Motion for Judgment on the Pleadings is fully briefed and the Court's Opinion and Order resolves the case.

The Defendants' Motion to Strike Exhibits raises legitimate issues with the Plaintiff's Response and filings. The Plaintiff presented information outside the pleadings in the form of exhibits with her Response. But in a motion for judgment on the pleadings, documents attached

to a motion, or a response to the same, cannot be considered as part of the pleadings unless they are referred to in the plaintiff's complaint and are central to the claim. *Levenstein v. Salefsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Accordingly, if "matters outside the pleadings are presented to and not excluded by the court," the court must treat a Rule 12(c) motion for judgment on the pleadings as a motion for summary judgment. Fed. R. Civ. P. 12(d). Here, because of the redundant and/or impertinent nature of the Plaintiff's exhibits, the Plaintiff's attempt to attach such exhibits in ECF No. 42 will not be permitted; and as a result, the Court will not convert the motion to one for summary judgment. *See Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002) (stating that a court has discretion to consider attached materials and convert a 12(b)(6) motion into a summary judgment motion). However, the Court will consider the Plaintiff's entire 40-page Response and everything contained in the Complaint in ruling on the Motion for Judgment on the Pleadings.

A motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), permits a party to move for judgment after the complaint and answer have been filed by the parties. When reviewing Rule 12(c) motions, a court must review the pleadings under the same standard that applies when reviewing motions to dismiss for failure to state a claim under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).

When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept all of the factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Under the liberal notice pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed facts, but surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Before proceeding to the factual background and analysis sections of this Opinion and Order, it is worth noting that the issues involved in this case have been streamlined. Despite the Plaintiff's continued attempts to add additional claims to the case, only two claims remain properly before the Court: (1) a 42 U.S.C. § 1983 claim for harassment; and (2) a claim for breach of contract.

## FACTUAL BACKGROUND

This dispute essentially pertains to the Plaintiff's real estate in Hammond, Indiana. The City of Hammond and its officials have issued the Plaintiff a number of citations regarding building code violations. The Plaintiff has filed with the Court hundreds of pages of documents that are difficult to understand. Some of the filings are repetitive. Others make arguments regarding claims that are no longer at issue in this litigation. As described above, the Court has narrowed this case to two specific claims the Plaintiff is attempting to make. The Court will recount here the very basic facts related to those claims as best as the Court understands them

4

based on the Plaintiff's filings.

The Plaintiff claims that she was harassed by City of Hammond officials. Specifically, the Plaintiff argues that City Building Inspector Kim Nordhoff issued numerous citations to the Plaintiff and that the issuance of the citations was done wrongfully. She recounts a time where Nordhoff requested permission to enter the Plaintiff's property for inspection, the Plaintiff denied Nordhoff's request to enter, and the two engaged in a verbal altercation. The Plaintiff claims that she is afraid of Nordhoff. She also claims that a truck circled her property on various occasions and that the person in the truck was taking pictures of the property. However, as best as the Court can tell, her factual claims are mostly related to the fact that she has been issued numerous citations and has been required to appear in court on multiple occasions. The Court also notes that according to the Defendant's brief, the Plaintiff's property has not been demolished.

With regard to her contract claim, the Plaintiff provides an affidavit from attorney David W. Weigle [Compl., ECF No. 1], who formerly represented the Plaintiff in a pro bono capacity. He does not represent the Plaintiff now. The primary issue with the Plaintiff's property was a faulty roof and whether the roof had to be totally removed and repaired or only partially repaired for the Plaintiff to comply with local regulations. Weigle's affidavit states that he had an agreement with the City of Hammond that the Plaintiff's roof issue "would be resolved by the opinion of a reputable roofing contractor licensed in the City of Hammond to be obtained by [the Plaintiff] relative to a hearing scheduled for December 8, 2011." The Plaintiff claims that this agreement established an enforceable contract and that the Defendants breached the contract when on December 7, 2011, the Plaintiff received a letter informing her that her property was in violation of several city housing codes and that it would be demolished if she failed to bring the

5

house up to code. According to the Plaintiff, on April 2, 2013, the city denied a building permit to two roofing companies that the Plaintiff had hired to work on the roof. However, the Plaintiff has not provided any information to show that a contractor provided an opinion to the city about whether proposed repairs would bring the roof into compliance with city codes.

The Defendants argue that the Plaintiff's claims are meritless. The Defendants specifically state that (1) the alleged conduct of city employees does not represent a constitutional violation under § 1983; and (2) no enforceable contract existed between the parties; and alternatively, even if an enforceable contract did exist, the alleged facts fail to show a breach of contract.

## ANALYSIS

**A.     Section 1983 Harassment Claim**

To prevail on a § 1983 claim, a plaintiff must show that she was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Although the Plaintiff does not specify what federal rights are at issue, the Plaintiff essentially claims that the Defendants abused their power as public officials, and thereby violated substantive due process.

Substantive due process claims, while "very limited" in scope, *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005), may address "harmful, arbitrary acts by public officials," *Geinosky v. City of Chi.*, 675 F.3d 743, 750 (7th Cir. 2012). "But such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed

by a public employee." *Id.* For such claims to be actionable, the alleged conduct must "shock the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998); *see Viehweg v. City of Mount Olive*, 559 Fed. Appx. 550, 552 (7th Cir. 2014) ("Under this standard, abuse that is merely tortious or even 'abhorrent' does not offend substantive due process.") (quoting *Tun*, 398 F.3d at 902); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation").

Here, the Plaintiff alleges that city employees—particularly City Building Inspector Kim Nordhoff—engaged in harassing behavior. According to the Plaintiff, Nordhoff requested permission to enter the Plaintiff's building to inspect it, the Plaintiff denied Nordhoff's request to enter, and the two engaged in a verbal altercation. The Plaintiff claims that a truck circled her property on multiple occasions and that the person in the truck was taking pictures of the property. Again, as best as the Court can tell, the Plaintiff's factual claims largely pertain to her being subject to multiple citations and being required to appear in court.

Even when construing the Complaint in a light most favorable to the Plaintiff, the Plaintiff has not pled facts suggesting a constitutional deprivation. As cited by the Defendants, *Viehweg* is an illustrative case under the factual scenario here. The plaintiff in *Viehweg* alleged that city officials "violat[ed] his substantive due-process rights by aggressively demanding that he demolish his garage." 559 Fed. Appx. at 550. The plaintiff claimed that city officials "barked demands and warnings [at him], pounded on his door, shone a headlight through his window, and told him not to attend a council meeting." *Id.* at 552. Nonetheless, the Court of Appeals held that the defendants' alleged conduct was "not so egregious that [it] violated substantive due process."

*Id.* at 553. The court specifically noted that the defendants' "largely verbal harangues" did not involve actual or threatened physical contact with the plaintiff or the seizing of his body or possessions. *Id.*; *compare also Rochin v. California*, 342 U.S. 165, 172 (1952) (forcible stomach pumping to retrieve swallowed evidence was a substantive due process violation) *with Geinosky*, 675 F.3d at 750–51 (concluding that the issuance of 24 parking tickets constituted "deliberate" and "unjustified" official harassment, but did not violate substantive due process) and *Palka v. Shelton*, 623 F.3d 447, 453–54 (7th Cir. 2010) (concluding that police investigatory tactics did not "shock the conscience" merely because they did not conform to internal department procedures).

Similar to *Viehweg*—a case which, even when viewing the allegations in the Plaintiff's favor, involved a far more troubling factual scenario—the Plaintiff does not allege that the Defendants' conduct involved actual or threatened physical contact, the seizing of her body or possessions, or any other behavior that "shocks the conscience." *Lewis*, 523 U.S. at 855. At worst, the Plaintiff's allegations portray aggressive enforcement tactics on the part of the Defendants. Even if the Plaintiff considered such conduct annoying or intrusive, it does not meet the high standard required to make out a constitutional violation under § 1983. *See Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) ("the due process clause [by way of a § 1983 claim] was not meant to serve as a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)) (internal quotation marks omitted).

Accordingly, the Plaintiff's § 1983 claim for harassment must be dismissed on the

pleadings.[1]

**B.      Breach of Contract Claim**

The Plaintiff further alleges that she entered into an enforceable contract with the Defendants, and the Defendants breached the contract by continuing to pursue code enforcement actions against her.

First, the Plaintiff does not show the existence of a contract. The formation of a contract requires an offer, acceptance, consideration, and a manifestation of mutual assent. *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005). "'A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract. Assent to those terms of a contract may be expressed by acts which manifest acceptance.'" *Homer v. Burman*, 743 N.E.2d 1144, 1146–47 (Ind. Ct. App. 2001) (quoting *Pinnacle Comp. Servs., Inc. v. Ameritech Publ'g., Inc.*, 642 N.E.2d 1011, 1013 (Ind. Ct. App. 1994)).

To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. *Ind. Dep't of Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174,

---

[1] The Plaintiff names the City of Hammond as a defendant for her § 1983 claim, presumably for the alleged actions of its employees. The Plaintiff also names Mayor Thomas J. McDermott and Tom Dabertin as individual defendants because they "had full knowledge of the harassment inflicted against the Plaintiff" by city employees. (Pl's Resp. 5.) However, "[m]unicipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional tort of their agents." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (citing *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). And in any event, municipalities can only be liable under § 1983 where there is individual liability against the employees on the underlying substantive claim. *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) ("A plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from a municipality under either a failure to train or failure to implement theory."). Here, the Court holds there is no liability for the underlying offense, and so dismissal is also appropriate on the § 1983 claim against these defendants.

179 (Ind. 2010) (citation omitted). For consideration to be in the form of a benefit to the promisor, a legal right must be given to the promisor to which the promisor was not otherwise entitled. *Id.* "A detriment on the other hand is a legal right the promisee has forborne." *Id.* In any form, consideration must be a bargained-for exchange. *Id.*; *see also Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC,* 653 F. Supp. 2d 896, 914 (N.D. Ind. 2009) (stating that consideration consists of any bargained-for exchange).

Here, the alleged agreement lacks consideration to support an enforceable contract. According to the Plaintiff's former attorney, during his representation of the Plaintiff, he and the City of Hammond agreed that the issue of the roof on the Plaintiff's property "would be resolved by the opinion of a reputable roofing contractor licensed in the City of Hammond to be obtained by [the Plaintiff] relative to a hearing scheduled for December 8, 2011." (Compl. at 44.) However, the Plaintiff has alleged no facts to suggest that the Defendants received a legal benefit from the agreement. Prior to the agreement, the Defendants had issued numerous citations to the Plaintiff regarding building code violations, including violations related to the Plaintiff's roof. The Complaint does not show that the Defendants' effort to enforce local ordinances was anything but a legal right to which they were already entitled. *See Price v. State*, 622 N.E.2d 954, 959 (Ind. 1993) ("The State may exercise its police power to promote the health, safety, comfort, morals, and welfare of the public. . . . [and] [i]n furthering these objectives, it may subject persons and property to restraints and burdens") (internal quotation marks and citation omitted).

Nor does the Plaintiff allege facts to show that she suffered a legal detriment. The Complaint contains allegations that on April 2, 2013—nearly two years after the alleged breach of contract—the city denied a building permit to a roofing company that the Plaintiff had hired to

work on the roof. But the Plaintiff alleges no facts to show that she made efforts to seek the opinion of a roofing contractor prior to the hearing on December 8, 2011. And even if she had, such efforts were in furtherance of her pre-existing legal obligation to adhere to local regulations. Viewing the alleged facts in a light most favorable to the Plaintiff, the agreement appears to embody nothing more than the city's promise regarding its method of enforcement. *See Burdsall v. City of Elwood*, 454 N.E.2d 434, 436 (Ind. Ct. App. 1983) ("a mere promise in and of itself does not automatically entitle one to relief as a matter of law. . . . [i]n order to have a legally binding contract, there must be a bargained for exchange.") (citation omitted).

Alternatively, even if an enforceable contract does exist, the Plaintiff has failed to allege facts showing a breach of contract. The Plaintiff claims that the Defendants breached the contract when on December 7, 2011, the Plaintiff received a letter informing her that her property was in violation of several city housing codes and that if she did not bring the house up to code it would be demolished. But nowhere does the Plaintiff's Complaint suggest that the alleged contract required the Defendants to dismiss any existing or future ordinance violations against the Plaintiff. Moreover, the Plaintiff has not provided any information to show that a contractor ever provided an opinion to the city, before or after the hearing on December 8, 2011, about whether proposed repairs would bring the roof into compliance with city codes. Accordingly, there is no breach here.

Because the Plaintiff's Complaint does not show either the existence of an enforceable contract or a breach of contract, her claim necessarily fails.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Judgment on the Pleadings [ECF No. 37] is GRANTED. Plaintiff's "Motion to Sue[] Defendants Under Their Official Capacity" [ECF No. 39] and Motion to Amend the Name of a Defendant [ECF No. 40] are DENIED AS MOOT. The Defendants' Motion to Strike [ECF No. 44] is GRANTED IN PART AND DENIED IN PART. The Clerk is directed to STRIKE the Plaintiff's filing of Exhibits [ECF No. 42]. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on January 30, 2015.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION